Filed 6/30/22  P. v. Davis CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B313431 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A022161) |
| v. | |
| DONALD RAY DAVIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Defendant and appellant Donald Ray Davis challenges the trial court's denial of his petition under Penal Code[1] section 1170.95 for resentencing of his murder conviction.  He does not dispute that he was a major participant in the underlying robbery that led to the victim's death but contends that the trial court erred in finding he acted with a reckless indifference to human life within the meaning of section 189, subdivision (e)(3), rendering him ineligible for resentencing.  We disagree.  Substantial evidence exists from which the trial court could have concluded, beyond a reasonable doubt, that Davis harbored a reckless indifference to human life.  Accordingly, Davis was not entitled to resentencing, and we affirm the post-judgment order.

## BACKGROUND

### A.    Factual background

At around 9:00 p.m. on September 15, 1980, the victim, Barry Cohen, and his co-worker, David McDonald, left the automobile dealership at which they worked and drove in Cohen's 1973 Firebird to a nearby gas station.  McDonald was the passenger.  Cohen spoke with the manager of the gas station about buying marijuana.  The manager headed in the direction of "the projects" and returned with Davis.  Cohen went over to Davis and the manager, obtained marijuana from the manager, and walked back to the car, with Davis following closely behind.  Cohen got back in the Firebird and stowed the marijuana in the glove compartment.

---

[1] All further undesignated statutory references are to the Penal Code.

2

Davis approached Cohen at the driver's side window and told him he could get Cohen any drugs he wanted, including a "Sherman joint," which was a PCP cigarette. Cohen asked what it would cost him to buy a Sherman joint, and Davis replied that it would cost $20 for a whole stick. Cohen stated that he only had $8 with him but that he still wanted to buy one and asked McDonald if he could borrow $10. McDonald responded that he had $100 with him but that he needed the money for rent and could not give Cohen any. Davis was crouched at the driver's side window, which was completely open, during this discussion.

Cohen told Davis that although he only had $8, he still wanted to buy a Sherman joint, and Davis said, "Follow me over into the projects and I will see what I can do." Cohen and McDonald followed in the Firebird as Davis led the way by foot. Davis instructed Cohen to pull around a corner and wait. Davis then walked into an apartment building, where he remained for around five to eight minutes. While Davis was gone, another man approached and discussed drugs with Cohen. When Davis returned, he asked, "Well, are you going to deal with me or are you going to deal with this guy?" and the second man left.

Davis then told Cohen that he was going to go get a Sherman joint, requested Cohen's money, and told Cohen to follow him. Cohen handed over the $8 and followed Davis to a well-lit parking lot. When Cohen started to pull in, Davis instructed him to go to a second parking lot approximately 75 feet away, which was "completely dark" with "no lights whatsoever." Cohen backed into the second lot.

Davis instructed Cohen to back in further after he had backed a third of the way into the lot. A "Mexican kid"[2] emerged from a nearby apartment building and instructed Cohen to "back [the car] up all the way" after Cohen stopped about halfway into the lot. Davis's accomplice then told Cohen to shut the car off and that he would be right back.[3]

After a few minutes, Davis approached the car and handed McDonald a half Sherman joint through the front passenger window. As McDonald passed the joint to Cohen, Davis walked around the front of the Firebird to Cohen's driver window. As Davis lit the joint and Cohen leaned forward to take a drag, McDonald noticed a shotgun barrel pass through the window behind Cohen's head. Cohen leaned back after taking a drag and felt the gun. He then grabbed the barrel of the shotgun and struggled with Davis's accomplice, who held the shotgun. Davis stood at Cohen's window, right next to his accomplice and said, "That's not necessary," but Davis made no attempt to remove the shotgun or divert the direction of the barrel. Cohen, still holding the barrel of the gun, started the car. As the car began to move, the shotgun fired one shot into Cohen's upper left chest, causing

---

[2] McDonald tentatively identified the so-called "Mexican kid" as Mario Orabueno, who was deceased at the time of Davis's trial. As his identity was never confirmed, we refer to this individual as Davis's accomplice or confederate.

[3] At the preliminary hearing, McDonald testified that Davis and his accomplice both left the parking lot and walked behind a nearby building. At trial, McDonald testified that he did not see Davis around at the time his accomplice told McDonald and Cohen he would be right back, but that he saw Davis's accomplice go behind a building.

him to collapse into McDonald's lap. Cohen's foot was still on the pedal, and McDonald steered the car out of the parking lot and into the street, where it spun in circles, repeatedly hitting the curb and some trash cans, before ultimately slowing down. After the car slowed, McDonald jumped out and began running down the street. He saw Davis's accomplice running parallel to him with the shotgun. McDonald did not see Davis at this time.

Residents of the neighborhood removed Cohen from the car, and one performed CPR on him, but he died at the scene of his gunshot wound.

### B.    Procedural history

In 1981, Davis was convicted by a jury of one count of first degree murder and one count of attempted robbery. The jury also found true that a principal used a firearm in the offenses within the meaning of section 12022, subdivision (a). Davis was sentenced to a term of 25 years to life for his first degree murder conviction, plus one year for the firearm enhancement, and two years for his attempted robbery conviction.

Davis filed a direct appeal arguing that the felony murder rule should be abolished. The court rejected the argument and affirmed the judgment.

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.), which eliminated liability for murder under the natural and probable consequences doctrine and limited the application of the felony-murder doctrine. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who could no longer be convicted of murder because of the changes in the law and

resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4.)

On September 4, 2019, Davis filed a petition for resentencing pursuant to section 1170.95 and Senate Bill No. 1437. On February 26, 2021, the trial court found that Davis had established a prima facie showing for section 1170.95 relief and issued an order to show cause. The court held an evidentiary hearing on April 9, 2021, at which the prosecution introduced police reports generated in the case and Davis presented only the partial trial transcript. Davis objected to the use of the preliminary hearing transcript, probation report, and police reports for purposes of the evidentiary hearing. The trial court recognized that it must make an independent determination of sufficient evidence and stated that its decision would be based on the trial record and the record contained in the court file. The trial court also stated that it could consider the preliminary hearing transcript but would give no deference to the earlier decision. The court took the matter under submission and permitted the parties to file additional briefing. Both parties filed post-evidentiary hearing briefs.

On June 10, 2021, the trial court denied the petition for rehearing, finding that the People had proved beyond a reasonable doubt that Davis was a major participant who acted with reckless indifference to human life under the five-point test set forth under *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*).[4] Specifically, the trial court found that it was "abundantly clear

---

[4] The trial court made clear that it did not consider the People's proffered hearsay evidence that Davis obtained the gun, took possession of it after the murder, and disposed of it.

that Davis planned the criminal enterprise that led to Barry Cohen's death" and that Davis "was aware of the particular dangers posed by the nature of the crime," as he was "clearly directing the transaction and setting up the attempted robbery, and did nothing to stop the possession and use of the shotgun by his accomplice."

## DISCUSSION

### I. Legal Framework of Section 1170.95 and Appellate Standard of Review

"In 2018, the Legislature enacted Senate Bill No. 1437 . . . after determining that there was further 'need for statutory changes to more equitably sentence offenders in accordance with their involvement in homicides.' [Citation.]" (*People v. Gentile*, *supra*, 10 Cal.5th at pp. 838–839.) Senate Bill No. 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation "also added section 1170.95 . . . , which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957, fn. omitted.)

The court applies a two-stage process in deciding a petition for resentencing under section 1170.95. First, the court must determine whether the petitioner has made a prima facie showing for relief. (§ 1170.95, subd. (c).) If so, it must issue an order to show cause and hold a final eligibility hearing. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 960.) At that hearing, the parties

may rely on the record of conviction or offer new or additional evidence.  (*Ibid.*, citing § 1170.95, subd. (d)(3).)  " '[T]he burden of proof [is] on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (*Lewis*, *supra*, at p. 960, quoting § 1170.95, subd. (d)(3).)[5]

We review the trial court's factual findings for substantial evidence.  (See *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087.)  We are guided by the principle that, under the substantial evidence standard, "[o]ur function on appeal is not to reweigh or reinterpret the evidence but simply to determine whether there is sufficient evidence in the record to warrant the inference . . . drawn by the trier of fact."  (*People v. Perry* (1972) 7 Cal.3d 756, 785, fn. omitted.)

## II.    Substantial Evidence Supports the Findings that Davis Was a Major Participant Who Acted with Reckless Indifference to Human Life

A section 1170.95 petitioner is not eligible for resentencing relief if he was the actual killer, acted with the intent to kill, or was a major participant in the underlying felony who acted with reckless indifference to human life.  (See §§ 189, subd. (e)(3) [citing § 190.2, subd. (d)], 1170.95, subd. (a)(3).)  The trial court denied Davis's petition on the basis that he was a major participant that acted with reckless indifference to human life.

---

[5] Amendments to section 1170.95, subdivision (d)(3) clarify that "[a] finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (Sen. Bill No. 775 (2021–2022 Reg. Sess.), ch. 551, § 2.)

8

No evidence was presented at the trial or resentencing hearing that Davis was the actual killer or that he acted with the intent to kill.

## A.  Major Participant

Davis concedes that he was a major participant in the crimes that led to Cohen's death.  However, as our high court has clarified that the factors relevant to determining whether a defendant was a major participant may also be relevant to the reckless indifference analysis because the " 'requirements significantly overlap' " (*People v. Clark* (2016) 63 Cal.4th 522, 614–615 (*Clark*)), we summarize them here.

In *Banks*, our high court explained that, in determining whether a defendant was a major participant in an underlying felony, the finder of fact must consider the totality of the circumstances, including:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?"  (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)  " ' "[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' [Citation.]"  (*In re Scoggins* (2020) 9 Cal.5th 667, 677; accord, *Banks*, *supra*, at p. 803.)

Noting that " 'a garden-variety armed robbery' "—i.e., a robbery committed using a gun (*Clark*, *supra*, 63 Cal.4th at

p. 617, fn. 74)—does not, alone, demonstrate reckless indifference (*Banks*, *supra*, 61 Cal.4th at p. 805), the Supreme Court concluded there was insufficient evidence to show the *Banks* defendant acted with the requisite mental state (*id.* at p. 807). Although there was evidence that he knew he was participating in the armed robbery of a marijuana dispensary, there was no evidence that he was aware his actions would involve a grave risk of death. (*Id.* at p. 807.) He dropped off his three accomplices near the dispensary, remained in the car away from the scene, and acted as the getaway driver when he received a signal from the others as they fled. (*Id.* at pp. 804–805.) The killing that took place was not planned; rather, it occurred spontaneously when the victim security guard presented unexpected armed resistance to the robbery. (*Id.* at p. 807.) Further, there was no evidence any of the perpetrators previously participated in shootings, murders, attempted murders or any other violent crime. (*Id.* at pp. 805, 810–811.)

## B. Reckless Indifference to Human Life

In *Clark*, our high court enumerated certain factors relevant to the inquiry of whether a defendant acted with reckless indifference: the defendant's knowledge of weapons, and the use and number of weapons; the defendant's proximity to the crime and opportunity to stop the killing or aid the victim; the duration of the offense conduct, that is, whether a murder came at the end of a prolonged period of restraint of the victims by defendant; the defendant's awareness his or her confederate was likely to kill; and the defendant's efforts to minimize the possibility of violence during the crime. (*Clark*, *supra*, 63 Cal.4th at pp. 618–623.) Unsurprisingly, " '[t]hese requirements significantly overlap [with those relevant to the major participant

10

determination] . . . for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' [Citation.]" (*Id*. at p. 615.)

*Clark* involved the attempted robbery of an Orange County computer store, during which the appealing defendant's accomplice shot and killed the mother of a store employee who arrived at the store to pick up her son. (*Clark*, *supra*, 63 Cal.4th at pp. 536–537.) The appellant "was the mastermind who planned and organized the attempted robbery and who was orchestrating the events at the scene of the crime." (*Id*. at p. 612.) However, at the time of the shooting, he was not at the store. (*Id*. at p. 619.) He drove to the scene shortly after the shooting and fled when he saw the victim on the ground, the police approaching, and his accomplice fleeing. (*Id*. at p. 620.)

In concluding there was insufficient evidence to support an inference the appellant was recklessly indifferent to human life, the court described aspects of the attempted robbery which shed light on the objective and subjective components of the analysis. Among other things, it explained: (1) the appellant planned the robbery, but attempted to minimize violence by planning it for after the store closed and incorporating use of an unloaded gun; (2) the appellant did not have a gun and did not direct his accomplices to kill; (3) he was not at the scene when the unplanned killing occurred, and there was no evidence he had an opportunity to act as a restraining influence; (4) although the planned duration of the robbery was substantial, it was scheduled to take place when not many people would be present, and anyone present was to be locked in a room away from the activity; and (5) there was no evidence the shooter had a

propensity for violence. (*Clark, supra*, 63 Cal.4th at pp. 618–622.)

### C.  Application

Applying the *Banks* and *Clark* factors, and deferring to the trial court's credibility evaluations, we find the trial court's conclusion concerning Davis's reckless indifference to human life is supported by substantial evidence.

A key factor distinguishes Davis from the defendants in *Banks* and *Clark*, where courts found insufficient evidence to support a special circumstance finding. Unlike those defendants, Davis was present for the shooting. (Cf. *Clark, supra*, 63 Cal.4th at p. 614; *Banks, supra*, 61 Cal.4th at p. 805.) We do not mean to imply that this single factor is dispositive in all cases, but note that it has been recognized that usually "[t]he defendants who have been able to get their special circumstance findings vacated under *Banks* and *Clark* are those who were not wielding guns themselves and *also not present for the shooting*." (*People v. Law* (2020) 48 Cal.App.5th 811, 825, italics added, review granted July 8, 2020, S262490.) A defendant is less likely to have acted with reckless indifference to human life if "he was not 'close enough to exercise a restraining effect on the crime or' " his accomplice. (*In re Moore* (2021) 68 Cal.App.5th 434, 452, quoting *In re Ramirez* (2019) 32 Cal.App.5th 384, 405.) Here, Davis was standing directly next to his accomplice when he put the barrel of the shotgun inside the car.[6]

---

[6] Davis's proximity to his accomplice is also one of several circumstances that distinguish this case from *People v. Ramirez* (2021) 71 Cal.App.5th 970. Davis relies on *Ramirez* to argue that the fact that he was unarmed is significant, even if he was aware that his confederate was armed. The court in *Ramirez* concluded

12

The evidence does not show that Davis took meaningful steps to minimize the risk of violence during the robbery. Davis planned to rob a drug buyer, someone more likely to be armed than, for example, the employees of the computer store in *Clark*. (See generally *Ybarra v. Illinois* (1979) 444 U.S. 85, 106 (dis. opn. of Rehnquist, J.) [recognizing heightened risk that individuals present in bar where drugs were offered for sale may be armed].) In fact, according to Davis's testimony, Cohen told him he had a gun in his trunk before they left the gas station. Armed resistance was more than a hypothetical possibility. One could infer that Davis's anticipation of resistance with lethal force led him to recruit an armed accomplice and to direct Cohen and McDonald to a dark parking lot where they were less likely to be seen by others, thus minimizing the risk of interference.

Moreover, the finder of fact could fairly conclude that Davis had the opportunity to prevent the shooting or to restrain his accomplice yet chose not to act. As noted, Davis was standing next to his accomplice and said only, "That's not necessary," but made no attempt to remove the shotgun or divert the direction of the barrel. Additionally, Davis concedes that it can be inferred from the evidence that he did not render aid to the victim and instead left the scene of the shooting. Although he contends that

---

that substantial evidence did not support the finding that the 15-year-old defendant acted with a reckless indifference to human life where he was unarmed, did not supply the murder weapon, did not instigate or plan the attempted carjacking, and was on the opposite side of the car from his accomplice and thus unable to restrain him when he began to shoot. (*Id.* at pp. 988–989.) Here, in contrast, Davis arranged the robbery and *was* close enough to exercise a restraining effect on his accomplice.

the significance of this fact is minimized because the crime was committed in a public parking lot in a residential neighborhood, where people were available to render aid, the trial court had sufficient grounds to disagree with this conclusion. Davis and his accomplice instructed Cohen to pull all the way into a "completely dark" parking lot with "no lights whatsoever." Had McDonald been unable to steer the car into the street, where he attracted attention by driving in circles and repeatedly hitting curbs and trash cans, it is unclear what would have happened and whether any assistance would have been forthcoming.

Davis correctly notes that several of the *Banks* and *Clark* factors are in his favor. For example, Davis was himself unarmed (see *Clark*, *supra*, 63 Cal.4th at p. 618; *Banks*, *supra*, 61 Cal.4th at p. 803), and there was no evidence that Davis knew of any history indicating his accomplice was likely to kill (see *Clark*, *supra*, at p. 621; see also *Banks*, *supra*, at p. 803). Although Davis interacted with Cohen from the meeting at the gas station until the shooting, Cohen was held at gunpoint only briefly (see *Clark*, *supra*, at pp. 620–621). However, as the Supreme Court cautioned in both *Banks* and *Clark*, "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Banks*, *supra*, at p. 803; see *Clark*, *supra*, at p. 618.)

Davis also emphasizes his lack of control over his accomplice and contends that the shooting was sudden and unexpected. He cites *In re Scoggins*, *supra*, 9 Cal.5th 667 as support for the proposition that a defendant who " 'lacked control over' " the actions of his confederates and never instructed them to kill the victim is "less culpable." However, the defendant in *Scoggins* "was not physically present at the crime scene and was not in a position to restrain [his confederate] once the meeting

14

with [the victim] began," but was instead "at a nearby gas station during the course of the crime and did not arrive at the crime scene until after the shooting occurred." (*Id.* at p. 678.) It was unclear from the evidence whether the defendant in *Scoggins* could even see the crime take place. (*Ibid.*) Moreover, the defendant had not planned for guns to be used during the robbery, and there was no evidence that he knew that a confederate would use a gun. (*Id.* at p. 677.) Here, one can infer that Davis asked his accomplice to bring a weapon, or at the very least, was aware was that he was returning to Cohen's car with a shotgun. We cannot agree that the shooting was "not the culmination of a series of acts," as Davis contends. Rather, the evidence supports the finding that Davis led a drug buyer, who claimed he had a gun in his trunk, first to an apartment building where the buyer waited for Davis to return for five to eight minutes, then to a lighted parking lot, and finally to a very dark parking lot, and that Davis involved an armed accomplice to assist him in an attempted robbery.

Relying on *In re Moore*, *supra*, 68 Cal.App.5th 434, Davis also argues that his youth at the time of the crime is a mitigating factor. The defendant in *Moore* was 16 years old at the time of the offense. The reasoning in *Moore* was premised on the historical assumption in the law that " 'children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them.' " (*Id.* at p. 453.) In contrast, Davis was not a child. He was 25 years old at the time of the robbery in question. In support of his assertion that his age should nevertheless remain a mitigating factor, Davis cites to section 3051, which provides that a defendant serving a term of 25 years to life who was 25 years or

15

younger at the time the controlling offense was committed becomes eligible for parole at a youth offender parole hearing after having served 25 years.  (§ 3051, subds. (a), (b)(3).) However, Davis cites no case that supports extending the assumptions about a child's maturity and judgment for persons beyond the age of 18—" 'the point where society draws the line for many purposes between childhood and adulthood' " (*Graham v. Florida* (2010) 560 U.S. 48, 74)— for purposes of determining whether a defendant acted with reckless indifference to human life.  Davis also fails to cite to any evidence to show that he was unusually immature emotionally or intellectually for a 25-year-old.  Thus, we cannot say that being 25 years old meaningfully undermined his ability to appreciate "that his actions created a graver risk of death than any other armed robbery" (*Moore*, *supra*, 68 Cal.App.5th at p. 454, fn. omitted).

Considering the relevant factors together, we conclude that substantial evidence supports the finding that Davis was a major participant in the crimes that led to Cohen's death and acted with reckless indifference to human life.

## DISPOSITION

We affirm the trial court's order denying Davis's petition for resentencing under section 1170.95.

NOT TO BE PUBLISHED


                                        MORI, J.*


We concur:



        ROTHSCHILD, P. J.



        BENDIX, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17